**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

**No. 25-03347**

---

Xu Lun,
*Plaintiff-Appellant,*

*v.*

Milwaukee Electric Tool Corporation, *et al.,*
*Defendants-Appellees.*

---

On Appeal from the United States District Court for the Eastern District of Wisconsin
Case No. 2:24-cv-00803-BHL
Before the Honorable Brett H. Ludwig

---

**BRIEF OF LEGAL SCHOLARS**
**AS AMICUS CURIAE IN SUPPORT OF APPELLANT**

---


ALISA TIWARI
AGNIESZKA M. FRYSZMAN
NICHOLAS J. JACQUES
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 NEW YORK AVE., N.W., SUITE 800
WASHINGTON, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
atiwari@cohenmilstein.com
afryszman@cohenmilstein.com
njacques@cohenmilstein.com

***Counsel for Amici***


May 1, 2026

Save As　　Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 20-03347

Short Caption: Xu Lun v. Milwaukee Electric Tool Corporation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Roger Alford, George A. Bermann, Hannah L. Buxbaum, Anthony J. Colangelo, John F. Coyle, William S. Dodge,

Maddie Gardner, Alexandra Huneeus, Aaron D. SImowitz, Carlos M. Vázquez, Christopher A. Whytock

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Cohen Milstein Sellers & Toll PLLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

_N/A_

(4) ___Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: *Alisa Tiwari*　Date: 4/29/2026

Attorney's Printed Name: Alisa Tiwari

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 1100 New York Ave N.W., Floor 8

Washington, D.C. 20005

Phone Number: 202-408-4600　Fax Number: 202-408-4699

E-Mail Address: Atiwari@cohenmilstein.com

rev. 12/19 AK

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 20-03347

Short Caption: Xu Lun v. Milwaukee Electric Tool Corporation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Roger Alford, George A. Bermann, Hannah L. Buxbaum, Anthony J. Colangelo, John F. Coyle, William S. Dodge,
Maddie Gardner, Alexandra Huneeus, Aaron D. Simowitz, Carlos M. Vázquez, Christopher A. Whytock

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Cohen Milstein Sellers & Toll PLLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) - Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: Agnieszka Fryszman Date: 4/29/2026

Attorney's Printed Name: Agnieszka Fryszman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 1100 New York Ave N.W., Floor 8
Washington, D.C. 20005

Phone Number: 202-408-4600 Fax Number: 202-408-4699

E-Mail Address: Afryszman@cohenmilstein.com

rev. 12/19 AK

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-03347

Short Caption: Xu Lun v. Milwaukee Electric Tool Corporation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✔] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Roger Alford, George A. Bermann, Hannah L. Buxbaum, Anthony J. Colangelo, John F. Coyle, William S. Dodge,

Maddie Gardner, Alexandra Huneeus, Aaron D. SImowitz, Carlos M. Vázquez, Christopher A. Whytock

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Cohen Milstein Sellers & Toll PLLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: [signature] Date: 4/30/2026

Attorney's Printed Name: Nicholas J. Jacques

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** [ ] **No** [✔]

Address: 1100 New York Ave N.W., Floor 8

Washington, D.C. 20005

Phone Number: 202-408-4600 Fax Number: 202-408-4699

E-Mail Address: Njacques@cohenmilstein.com

rev. 12/19 AK

## TABLE OF CONTENTS

INTEREST OF AMICI ........................................................................................1

BACKGROUND ...............................................................................................6

ARGUMENT ....................................................................................................9

A. The § 1589(b) Claims Are Not Extraterritorial Because the Defendant's Conduct Occurred in the United States ..........................11

B. The District Court Misapplied the Presumption Against Extraterritoriality ..........................................................................14

1. There Is a Clear Indication that § 1595(a) Applies Extraterritorially..........................................................................15

2. The "Focus" of the Benefit Provision Is on the Benefit ...........22

CONCLUSION ...............................................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. Carlyle Grp., Inc.*,
No. CV 22-3603 (ABJ), 2024 WL 5331993 (D.D.C. Sept. 27, 2024) ....17

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
600 U.S. 412 (2023)....11, 27

*Adhikari v. Kellogg Brown & Root, Inc.*,
845 F.3d 184 (5th Cir. 2017) ....10, 16, 17, 22

*U.S. ex rel. Hawkins v. ManTech Int'l Corp.*,
752 F. Supp. 3d 118 (D.D.C. 2024)....17, 18

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017)....25

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)....14

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
108 F.4th 458 (7th Cir. 2024) ....18, 20

*Nestlé USA, Inc. v. Doe*,
593 U.S. 628 (2021)....21, 22

*Ratha v. Rubicon Res., LLC*,
168 F.4th 541 (9th Cir. 2026) (en banc) ....10, 17, 18

*RJR Nabisco, Inc. v. European Community*,
579 U.S. 325 (2016).... 10, 14, 15, 16, 17, 18, 23, 27

*Rodriguez v. Pan American Health Organization*,
29 F.4th 706 (D.C. Cir. 2022)....12, 13

*Roe v. Howard*,
917 F.3d 229 (4th Cir. 2019) .... 10, 16, 17, 19, 20, 21, 22

*Russello v. United States*,
464 U.S. 16 (1983) .......... 11, 25

*WesternGeco LLC v. ION Geophysical Corp.*,
585 U.S. 407 (2018) .......... 23, 24, 26, 27

*Yegiazaryan v. Smagin*,
599 U.S. 533 (2023) .......... 20

**Statutes**

18 U.S.C. § 7 .......... 7

18 U.S.C. § 1589 .......... 9, 13, 25, 26

18 U.S.C. § 1591 .......... 7

18 U.S.C. § 1595 .......... 7, 8, 13, 14, 16, 24

18 U.S.C. § 1596 .......... 8, 16

18 U.S.C. § 1964 .......... 19

18 U.S.C. § 3271 .......... 8, 16

22 U.S.C. § 288a .......... 12

28 U.S.C. § 1605 .......... 12

35 U.S.C. § 271 .......... 26

35 U.S.C. § 284 .......... 24

Torture Victim Protection Act, 28 U.S.C. § 1350 note .......... 6

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L.
108-193, 117 Stat. 2875 .......... 7

Trafficking Victims Protection Reauthorization Act of 2005, Pub. L.
No. 109-164, 119 Stat. 3558 .......... 7, 8

Victims of Trafficking and Violence Protection Act of 2000, Div. A.,
Pub. L. No. 106-386, 114 Stat. 1464 .......... 6, 7

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ....................................... 7, 8, 9

**Other Authorities**

Fed. R. App. P. 29(a)(4)(e) ............................................................................ 1

*Hearing Before the H. Comm. on Foreign Affs.*, 110th Cong. 128 (October 23, 2007) .................................................................................. 6

## INTEREST OF AMICI[1]

Amici are legal scholars with expertise in extraterritoriality and transnational litigation who have a strong interest in the proper application of the presumption against extraterritoriality. Amici make an argument that the Plaintiff-Appellant does not—that the district court erred in applying the presumption against extraterritoriality at all because the Defendant's violation of the Trafficking Victims Protection Act (TVPRA) occurred entirely within the United States. Amici further argue that the district court erred in applying the presumption against extraterritoriality at each step of the two-step framework.

**Roger Alford** is Professor of Law at Notre Dame Law School. He is a former Principal Deputy Assistant Attorney General (2025) and Deputy Assistant Attorney General (2017-2019) at the U.S. Department of Justice. He has authored dozens of articles on international law, including numerous articles that address the extraterritorial application of U.S. law.

**George A. Bermann** is the Jean Monnet Professor of European Union Law,

---

[1] Amici and their counsel authored this brief in its entirety. No counsel for a party authored this brief in whole or in part, no party or party's counsel contributed money to fund the preparation or submission of this brief, and no person other than the amici curiae or their counsel contributed money to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(e). Counsel for all parties to this appeal have consented to the filing of this brief.

Walter Gellhorn Professor of Law, and Director of the Center for International Commercial and Investment Arbitration at Columbia Law School. He served as Chief Reporter for the American Law Institute's Restatement of the U.S. Law of International Commercial and Investor-State Arbitration (2023).

**Hannah L. Buxbaum** is Martin Luther King, Jr. Professor of Law at the U.C. Davis School of Law. She is the U.S. member of the Curatorium of the Hague Academy of International Law and served as an Adviser for the first phase of the American Law Institute's Restatement (Fourth) of the Foreign Relations Law of the United States (2018). She is the editor of *Extraterritoriality in Comparative Perspective* (Brill, 2025) and co-editor of *Extraterritoriality/L'extraterritorialité* (Brill, 2022).

**Anthony J. Colangelo** is the Robert G. Story Distinguished Faculty Fellow and Professor of Law at Southern Methodist University Dedman School of Law. He is the author, among other publications, of *A Unified Approach to Extraterritoriality*, 97 Va. L. Rev. 1019 (2011), and *What is Extraterritorial Jurisdiction?*, 99 Cornell L. Rev. 1303 (2014).

**John F. Coyle** is the Reef C. Ivey II Distinguished Professor at the University of North Carolina School of Law and a Founding Editor of the Transnational Litigation Blog (www.tlblog.org). He is an Adviser to the American

Law Institute's Restatement (Third) of Conflict of Laws and the author of more than a dozen articles in the field of private international law.

**William S. Dodge** is Lobingier Professor of Comparative Law and Jurisprudence at the George Washington University Law School and a Founding Editor of the Transnational Litigation Blog (www.tlblog.org). He serves as a Reporter for the American Law Institute's Restatement (Fourth) of Foreign Relations Law and served as Counselor on International Law to the Legal Adviser at the U.S. Department of State from 2011 to 2012. He is the author, among other articles, of *The New Presumption Against Extraterritoriality*, 133 Harv. L. Rev. 1582 (2020).

**Maggie Gardner** is a Professor of Law at Cornell Law School and a Founding Editor of the Transnational Litigation Blog (www.tlblog.org). Her publications on transnational litigation include *Deferring to Foreign Courts*, 169 U. Penn. L. Rev. 2291 (2021), and *Abstention at the Border*, 105 Va. L. Rev. 63 (2019).

**Alexandra Huneeus** is Evjue Bascom Professor of Law and Legal Studies at the University of Wisconsin, Madison. She has written extensively about international human rights law and its intersection with domestic law in the Americas. She is the Chair and co-founder of the Human Rights Program at the

University of Wisconsin and was the United States candidate for the Inter-American Commission on Human Rights in 2020.

**Aaron D. Simowitz** is an Associate Professor at Willamette University College of Law, a Program Affiliate Scholar at the Classical Liberal Institute at NYU School of Law, and the Director of the Business Lawyering Institute at Willamette University. He has authored over a dozen articles on private international law, including *The Extraterritoriality Formalisms*, 51 Conn. L. Rev. 375 (2019).

**Carlos M. Vázquez** is the Scott K. Ginsburg Professor of Law at Georgetown University Law Center and an Adviser to the Restatement (Fourth) of Foreign Relations Law. He has written extensively about extraterritoriality and conflict of laws. He is the co-author of *Conflict of Laws: Cases and Materials* (8th ed. 2020) (with Lea Brilmayer, Jack L. Goldsmith, and Erin O'Hara O'Connor), and his articles have appeared in the *Columbia Law Review*, the *Harvard Law Review*, and the *Yale Law Journal* among other journals.

**Christopher A. Whytock** is Professor of Law and Political Science at the University of California, Irvine, where he teaches and studies transnational litigation and conflict of laws. He is an Associate Reporter for the American Law Institute's Restatement (Third) of Conflict of Laws and a Member of the U.S. State

Department Advisory Committee on Private International Law. He previously served as an Adviser for the first phase of the Restatement (Fourth) of Foreign Relations Law (2018).

## BACKGROUND

Congress first enacted the Trafficking Victims Protection Act in 2000 and has expanded and strengthened the statute during successive reauthorizations.[2] Through presidential administrations of different parties, and on a bipartisan basis, Congress has pursued an aggressive, multifaceted strategy to eliminate modern-day slavery. *See, e.g.*, *Various Bills and Resols.: Hearing Before the H. Comm. on Foreign Affs.*, 110th Cong. 128 (October 23, 2007) (statement of Rep. Smith, R-New Jersey) (Trafficking "is one of those issues where there has been no gap between us on either side of the aisle. It has united conservatives, moderates, and liberals in a grand fight to combat the scourge of modern-day slavery."). The TVPRA is an interlocking statutory scheme that defines a series of trafficking offenses and imposes civil liability for violations of those offenses in the United States and abroad.

The original statute was enacted in 2000. *See* Victims of Trafficking and Violence Protection Act of 2000, Div. A., Pub. L. No. 106-386, 114 Stat. 1464.

---

[2] The district court referred to the act as the TVPA, an abbreviation of its original title. It is more common to refer to the act as the TVPRA, an abbreviation of the title of the act as reauthorized in 2003. In part, this is to avoid confusion with the Torture Victim Protection Act, 28 U.S.C. § 1350 note, which is also known as the TVPA.

Codified primarily in Chapter 77 of Title 18, the act defined the crimes of forced labor, trafficking, and sex trafficking. *See* Pub. L. No. 106-386, § 112(a), 114 Stat. at 1486-88 (codified at 18 U.S.C. §§ 1589, 1590, and 1591).

In 2003, Congress reauthorized and expanded the TVPRA. *See* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. 108-193, 117 Stat. 2875. Congress amended § 1591 to apply extraterritorially to sex trafficking "within the special maritime and territorial jurisdiction of the United States." *Id.* § 5(a), 117 Stat. at 2879 (codified at 18 U.S.C. § 1591(a)(1)); *see also* 18 U.S.C. § 7(9) ("special maritime and territorial jurisdiction" includes various U.S. installations abroad). Congress also added a private cause of action for the three offenses it had created in 2000, creating a civil remedy coextensive with sections 1589, 1590, and 1591. *Id.* § 4(a)(4)(A), 117 Stat. at 2878 (codified at 18 U.S.C. § 1595(a)).

Congress reauthorized and expanded the TVPRA again in 2005 and 2008. *See* Trafficking Victims Protection Reauthorization Act of 2005, Pub. L. No. 109-164, 119 Stat. 3558; William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044. In both reauthorizations, Congress further expanded the extraterritorial jurisdiction of the statute. In 2005, Congress extended extraterritorial jurisdiction over offenses in violation of Chapter 77 committed by persons "employed by or accompanying the

Federal Government outside the United States." TVPRA of 2005, 119 Stat. at 3562 (codified at 18 U.S.C. § 3271(a)).

In 2008, Congress extended extraterritorial jurisdiction over six specified offenses when "an alleged offender" is a United States national, a permanent resident, or present in the United States, regardless of whether the person was employed by the U.S. government: §§ 1581, 1583, 1584, 1589, 1590, and 1591. TVPRA of 2008, § 223(a), 122 Stat. at 5071 (codified at 18 U.S.C. § 1596(a)).

In the same bill, Congress expanded the civil remedy in two respects. First, it made the civil remedy, § 1595(a), coextensive with all violations of Chapter 77, including, but not limited to, the sections that apply extraterritorially. TVPRA of 2008, § 221, 122 Stat. at 5067 (codified at 18 U.S.C. § 1595(a)). Second, Congress extended civil liability not just to "perpetrators" but also to "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." TVPRA of 2008, § 221, 122 Stat. at 5067 (codified at 18 U.S.C. § 1595(a)).

At the same time, Congress amended § 1589 by making it a criminal offense not only to engage in forced labor but also to "knowingly benefit[] . . . from participation in a venture which has engaged in [forced labor], knowing or in

reckless disregard of the fact that the venture has engaged in [forced labor]." TVPRA of 2008, § 222(b)(3), 122 Stat. at 5068 (codified at 18 U.S.C. § 1589(b)). A person who violates § 1589(b) by knowingly benefiting from forced labor may be sued directly as a "perpetrator" under § 1595(a).

## ARGUMENT

According to the complaint, Appellee Milwaukee Electric Tool Corporation ("Milwaukee Tool") violated 18 U.S.C. § 1589(b) by knowingly benefiting from forced labor performed by Appellant Xu Lun while Lun was imprisoned in China. Applying the presumption against extraterritoriality, the district court dismissed Lun's claims on the ground that they were impermissibly extraterritorial. *See* SA-12–24. Amici submit that the district court erred in two respects.

First, the district court erred in applying the presumption against extraterritoriality at all because Milwaukee Tool's violation of the TVPRA occurred entirely within the United States. Milwaukee Tool allegedly sold the products made with Chinese prison labor in the United States and retained the proceeds here in violation of 18 U.S.C. § 1589(b). Because the alleged violation of § 1589(b) occurred in the United States—the sole violation for which Plaintiff has

alleged that Milwaukee Tool is liable—this case presents no occasion to consider whether the TVPRA civil remedy applies extraterritorially.

Second, and in the alternative, the district court erred at both steps of the Supreme Court's "two-step framework for analyzing extraterritoriality issues." *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337 (2016)." At the first step, one finds "a clear, affirmative indication," *id.* at 337, that § 1595(a) applies extraterritoriality because—like the RICO statute at issue in *RJR Nabisco*—§ 1595(a)'s "incorporation of extraterritorial predicates gives [that provision] commensurate extraterritorial effect." *Id.* at 340. The district court's holding to the contrary conflicts with the decisions of the other Circuits to have addressed the issue. *See Roe v. Howard*, 917 F.3d 229, 241-43 (4th Cir. 2019) (holding that § 1595(a) applies extraterritorially); *Adhikari v. Kellogg Brown & Root, Inc*., 845 F.3d 184, 204 (5th Cir. 2017) (same); *see also Ratha v. Rubicon Res., LLC*, 168 F.4th 541, 554 (9th Cir. 2026) (en banc) (permitting claims of benefitting from overseas forced labor to proceed).

At the second step, because "the conduct relevant to the statute's focus occurred in the United States," this case involves a domestic application of the TVPRA. *RJR Nabisco*, 579 U.S at 337. Plaintiff has alleged a violation of § 1589(b), which focuses on *benefiting* from forced labor. But the district court

read this provision to have the same focus as § 1589(a) which prohibits *providing or obtaining* forced labor. *See* SA-24. The court erred by "concluding … that the differing language in the two subsections has the same meaning in each." *Russello v. United States*, 464 U.S. 16, 23 (1983).

### A. The § 1589(b) Claims Are Not Extraterritorial Because the Defendant's Conduct Occurred in the United States

The district court dismissed Plaintiff's TVPRA claim as impermissibly extraterritorial. As discussed below in Section B, the court misapplied the presumption against extraterritoriality. But the district court made a more fundamental error by applying the presumption against extraterritoriality at all. The *RJR Nabisco* two-step framework presumes that the claims "involve both domestic and foreign activity." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 419 (2023). When the defendant's allegedly wrongful activity is purely domestic, there is no need to conduct the *RJR Nabisco* analysis.

Such is the case here. Section 1589(b) makes it a criminal offense to benefit from participation in a venture that has provided or obtained labor by specified means (*e.g.*, by means of force, threats of force or physical restraint). Milwaukee Tool allegedly benefited in the United States by selling gloves made with labor obtained by prohibited means and retained the proceeds here. Plaintiff's civil claim

under § 1595(a) against Milwaukee Tool is thus based on violations of the TVPRA that occurred in the United States, and there is no need to consider whether the TVPRA's civil cause of action applies extraterritorially.

The D.C. Circuit addressed the domestic application of § 1589(b) in *Rodriguez v. Pan American Health Organization*, 29 F.4th 706 (D.C. Cir. 2022), which (like this case) alleged that a defendant in the United States benefited from forced labor abroad. *Rodriguez* involved a civil claim against the Pan American Health Organization (PAHO) for violating § 1589(b) by benefiting from forced labor in connection with a program that sent Cuban doctors to Brazil. To determine whether PAHO was immune from suit under the International Organizations Immunities Act, the D.C. Circuit had to decide whether the claim was "based upon a commercial activity carried on in the United States." 28 U.S.C. § 1605(a)(2).[3] The Court held that this exception to immunity applied because "[t]he 'financial

---

[3] Under the International Organizations Immunities Act, "[i]nternational organizations . . . shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments," 22 U.S.C. § 288a(b), which is what led the D.C. Circuit to consider whether the Foreign Sovereign Immunities Act's commercial activity exception, 28 U.S.C. § 1605(a)(2), applied. Plaintiffs in *Rodriguez* also brought claims for violations of § 1589(a), § 1590, and RICO, but the district court held that PAHO was immune from suit with respect to those claims, so that those claims were not before the court on interlocutory appeal. *Rodriguez*, 29 F.4th at 710.

benefit' that violates § 1589(b) is itself 'wrongful conduct' and occurred in the United States." *Rodriguez*, 29 F.4th at 716.

The defendant PAHO argued that the § 1589(b) claims in that case were based upon "the activity that in fact injured the physicians, the alleged human trafficking and forced labor." *Id.* at 715. But the D.C. Circuit squarely rejected that argument, noting that PAHO's "alleged financial activity itself gives rise to a cause of action." *Id.* at 716. "The physicians allege that PAHO committed a financial crime in the U.S., *see* 18 U.S.C. § 1589(b)," the Court continued, "and press the corresponding civil claim, *see* 18 U.S.C. § 1595(a)." *Id.* The plaintiffs in *Rodriguez* had alleged "wrongful conduct that occurred entirely within the U.S.," the D.C. Circuit concluded—specifically, that "PAHO received, forwarded and retained the *Mais Médicos* money through its Washington, D.C. bank account." *Id.*

Similarly, in this case, Plaintiff has alleged a violation of § 1589(b) that "occurred entirely within the U.S." *Id.* According to the complaint, Milwaukee Tool sold the gloves in the United States and retained the proceeds here. In contrast to § 1589(a), which makes it a criminal offense to *provide or obtain* forced labor, § 1589(b) makes it a criminal offense to *benefit from* forced labor. As in *Rodriguez*, therefore, where the forced labor occurred is irrelevant.

The TVPRA's civil cause of action makes "the perpetrator" of a TVPRA violation liable for damages. 18 U.S.C. § 1595(a). Milwaukee Tool allegedly violated § 1589(b) in the United States and is therefore subject to liability as the perpetrator. Because the alleged violation occurred in the United States, there is no need to consider whether the TVPRA's civil cause of action applies extraterritorially.

### B. The District Court Misapplied the Presumption Against Extraterritoriality

In *RJR Nabisco*, the Supreme Court articulated "a two-step framework for analyzing extraterritoriality issues." 579 U.S. at 337. At step one, a court asks "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* The presumption is not a "clear statement rule." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010). "Assuredly context can be consulted as well." *RJR Nabisco*, 579 U.S. at 340 (quoting *Morrison*, 561 U.S. at 265). In *RJR Nabisco*, the Supreme Court found a clear indication of extraterritoriality in the "structure" of the statute, *id.*, because RICO § 1962 incorporated predicate offenses that apply extraterritorially. As explained below, the same is true of the TVPRA's civil cause of action. And this ends the inquiry:

when “there is a clear indication at step one that [a statute] applies extraterritorially,” a court “do[es] not proceed to the ‘focus’ step.” *Id.* at 342.

At step two, a court must “determine whether the case involves a domestic application of the statute . . . by looking to the statute’s ‘focus.’” *Id.* at 337. “If the conduct relevant to the statute’s focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad.” *Id.* at 337. As explained below, the “focus” of the benefit provision is on benefiting, which in this case occurred in the United States.

Assuming that the presumption against extraterritoriality is relevant to this case, the district court misapplied that presumption at both steps of the analysis.

**1. There Is a Clear Indication that § 1595(a) Applies Extraterritorially**

Section 1595(a) applies extraterritorially for the same reason that the *RJR Nabisco* Court held that RICO’s criminal prohibitions apply extraterritorially—because it directly incorporates predicate offenses that expressly apply extraterritorially. By virtue of § 1596(a), six of Chapter 77’s offenses expressly apply extraterritorially when “an alleged offender” is a national of the United

States, a permanent resident, or present in the United States. 18 U.S.C. § 1596(a).[4] In *RJR Nabisco*, the Supreme Court held that "RICO's incorporation of extraterritorial predicates gives RICO commensurate extraterritorial effect." *RJR Nabisco*, 579 U.S. at 340. The same is true of the TVPRA civil remedy. Section 1595(a) creates a civil remedy coextensive with the TVPRA criminal predicates. 18 U.S.C. § 1595(a). As a result, TVPRA § 1595(a), like RICO § 1962, applies extraterritorially to the extent the offense on which a claim is based applies extraterritorially.[5]

Every Circuit to consider this question has held that § 1595 rebuts the presumption against extraterritoriality at step one. *See Howard*, 917 F.3d at 241 ("Applying the first step of the *RJR Nabisco* inquiry, we are satisfied that § 1595 of the TVPA evinces a 'clear indication of extraterritorial effect' …. Of crucial importance, § 1595 directly incorporates predicate offenses that govern foreign conduct, providing strong textual evidence of its extraterritorial effect when

---

[4] Additionally, by virtue of 18 U.S.C. § 3271, all of Chapter 77's offenses apply extraterritorially when an offender is employed by or accompanies the Federal Government outside the United States.

[5] In this case, Milwaukee Tool is a U.S. national, which would satisfy § 1596(a) requirements for extraterritorial application of § 1589(b). But it is worth repeating that, as discussed above in Section A, Milwaukee Tool's alleged violations of § 1589(b) occurred in the United States.

applied to those predicates."); *Adhikari*, 845 F.3d at 204 ("[B]y conferring 'extraterritorial jurisdiction over any offense … under' the TVPRA, § 1596 permits private parties to pursue a civil remedy under the TVPRA for extraterritorial violations"); *see also Ratha*, 168 F.4th at 554 (observing, under the heading "Congress Designed Co-extensive Criminal and Civil Liability," that "Congress intended every criminal act to have a civil-remedy counterpart" (emphasis in original)). In *Howard*, the Fourth Circuit explained:

> Many of the predicate offenses proscribed by chapter 77 apply extraterritorially, either expressly or by way of other provisions delineating their extraterritorial application . . . . Thus, pursuant to *RJR Nabisco*, "Congress's incorporation" of such "extraterritorial predicates" into § 1595 "gives a clear, affirmative indication" that § 1595 provides a civil remedy for the foreign conduct that is prohibited by chapter 77. That is, § 1595 applies extraterritorially to the extent that the particular predicate offense supporting a specific claim applies extraterritorially.

*Howard*, 917 F.3d at 242 (citations omitted); *see also U.S. ex rel. Hawkins v. ManTech Int'l Corp.*, 752 F. Supp. 3d 118, 133-34 (D.D.C. 2024) (agreeing with *Howard*); *Abernathy v. Carlyle Grp., Inc.*, No. CV 22-3603 (ABJ), 2024 WL 5331993, at *12-13 (D.D.C. Sept. 27, 2024) (same).

The district court disagreed. It began by noting that § 1595 "says nothing regarding extraterritorial application." SA-16. The same, however, was true of the RICO statute at issue in *RJR Nabisco*. *See* 579 U.S. at 340 (noting that "RICO

itself does not refer to extraterritorial application" (quotation marks omitted)). *RJR Nabisco* noted that "an express statement of extraterritoriality is not essential" and went on to find a clear indication of extraterritoriality in the "structure" of RICO, specifically in its incorporation of extraterritorial predicates. *Id.*; *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 482 (7th Cir. 2024) (finding that extraterritoriality provision in Defend Trade Secrets Act § 1837 rebutted the presumption of extraterritoriality as to civil cause of action in § 1836).

The district court also noted that § 1596(a) makes "no mention of Section 1595." SA-17. But Section 1596(a) defines the scope territorial scope of the TVPRA's criminal prohibition, while Section 1595(a) creates coextensive civil liability—necessarily including extraterritorial offenses that § 1596(a) brings within the TVPRA's reach. *See Ratha*, 168 F.4th at 554 ("Congress made clear in the 2008 version of § 1595(a) that <u>any</u> violation of the human-trafficking chapter would give rise to civil liability." (emphasis in original)). As the district court noted in *Hawkins*, for Congress to have included § 1595 in § 1596 "would not have made sense. Section [1596(a)] listed 'offenses' over which courts would have extraterritorial jurisdiction, and section 1595 is not an 'offense'—it is a free-standing provision that creates a civil remedy for an 'offense,' that is, any 'violation of this chapter.'" *Hawkins*, 752 F. Supp. 3d at 133. Moreover, because §

1595(a) already provided a civil remedy that was coextensive with the TVPRA's predicate criminal provisions, it would have been redundant to include a reference to § 1595 in § 1596. Logically, all that Congress needed to do to extend § 1595(a)'s civil remedy extraterritorially was to change the extraterritorial scope of the criminal offenses to which the civil remedy referred.

The district court relied heavily on *RJR Nabisco*'s holding that RICO's civil cause of action, as distinguished from its criminal prohibition, does not rebut the presumption against extraterritoriality. *See* SA-17, 21. But, as the Fourth Circuit explained in *Howard*, that part of the *RJR Nabisco* opinion "depended on factors that do not apply to § 1595 of the TVPA." *Howard*, 917 F.3d at 243.

First, RICO's civil cause of action, 18 U.S.C. § 1964(c), "does not directly incorporate any extraterritorial predicates." *Id.* It refers to RICO's criminal prohibition, 18 U.S.C. § 1962, which in turn refers to extraterritorial predicates in other statutes. The TVPRA, by contrast, does not rely on such a chain of statutory provisions. Section 1595(a) "expressly and directly incorporates the TVPA's criminal predicates, many of which manifestly apply to foreign conduct." *Id.* Indeed, these provisions, which appear in consecutive sections of the U.S. Code, were amended at the same time in consecutive sections of the same reauthorization

bill, *see supra* p. 8, evidence that Congress intended the provisions to work together.

Second, *RJR Nabisco* "emphasized that the text of § 1964(c) limited its application to certain types of injuries, and thereby created a gap between the reach of § 1964(c) civil liability and § 1962 criminal liability." *Howard*, 917 F.3d at 243. As the Supreme Court later emphasized, "by cabining the [RICO] private cause of action to injuries to business or property, Congress signaled that the civil remedy is not coextensive with § 1962's substantive provisions." *Yegiazaryan v. Smagin*, 599 U.S. 533, 542 (2023) (citation modified). The text of section 1595, by contrast, "shows that it applies coextensively with its predicate offenses, omitting any qualifying or modifying language, which further distinguishes it from § 1964(c)." *Howard*, 917 F.3d at 243.

Third, RICO's civil cause of action "contained no other indication that it should apply extraterritorially." *Id.* The TVPRA "more clearly targets foreign conduct than any provision of RICO, as demonstrated by its international scope and Congress's repeated expansions of its extraterritorial reach." *Id*. In *Motorola Solutions*, this Court observed that "[c]ongressionally enacted legislative purposes and findings are part of a statute's text, and thus are one 'permissible indicator of meaning' for courts." 108 F.4th at 482 (citing Antonin Scalia & Bryan A. Garner,

Reading Law 63 (2012)). The Fourth Circuit similarly looked to the TVPRA's enacted purpose and findings, *Howard*, 917 F.3d at 242-43, concluding that "the purpose, structure, history, and context of the TVPA all support the extraterritorial application of § 1595 for an appropriate predicate offense." *Id.* at 242.

In short, the TVPRA's civil cause of action is more closely analogous to RICO's criminal provisions than to RICO's civil cause of action.

The district court also noted *RJR Nabisco*'s statement that "providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct." SA-17 (quoting *RJR Nabisco*, 579 U.S. at 346-47). Congress, however, has already weighed those considerations. As the Supreme Court recently observed, "Congress settled on the current approach to private remedies against human trafficking only after its 'understanding of the problem evolved' through years of studying 'how to best craft a response.'" *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 639 (2021) (quoting Brief for Members of Congress as Amici Curiae 9, 13).[6]

---

[6] In the brief cited, 21 Members of Congress, including the relevant bill sponsors and committee chairs, confirmed that the TVPRA's civil cause of action applies extraterritorially. *See* Brief of Members of Congress Senator Blumenthal, Representative Smith, et al., as Amici Curiae Supporting Respondents at *6, *Nestlé USA, Inc. v. Doe*, 593 U.S. 628 (2021) (Nos. 19-416 & 19-453) ("The TVPRA also

"Viewed as a whole," the Fourth Circuit noted, the TVPRA "represents a far-reaching congressional effort to combat transnational human trafficking on numerous fronts, including by expanding the civil claims and remedies available to its victims." *Howard*, 917 F.3d at 242. "This is, in short, a situation in which Congress was clearly concerned with international rather than purely domestic matters." *Id.*[7]

**2. The "Focus" of the Benefit Provision Is on the Benefit**

Under *RJR Nabisco*'s two-step framework, if there is no clear indication of extraterritoriality at step one, then at step two, a court must "determine whether the case involves a domestic application of the statute … by looking to the statute's

---

provides victims of human trafficking and forced labor a private cause of action coextensive with its criminal provisions. It applies extraterritorially as long as a defendant is an American citizen or resident, or is present in the United States."); *id*. at *32-33 ("[T]he TVPRA, including its private right of action, applies to extraterritorial conduct provided that a defendant is a U.S. national or permanent resident, or is present in the United States.").

[7] The district court drew a negative inference from the fact that Congress "did not add any language regarding extraterritorial application of Section 1595" when it amended the TVPRA in 2018 and 2023. SA-18. But Congress would have reason to do so only if it thought the *RJR Nabisco* necessarily led to the conclusion that courts would interpret § 1595 not to apply extraterritorially, which the uniform Court of Appeals decisions to the contrary shows to be false. By 2018, the Fifth Circuit had already concluded that the TVPRA's civil cause of action applies extraterritorially. *See Adhikari*, 845 F.3d at 204. And by 2023, the Fourth Circuit had done so as well. *See Howard*, 917 F.3d at 241-43.

'focus.' If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco*, 579 U.S. at 337. The Supreme Court has said courts may begin with the second step when "addressing step one would require resolving 'difficult questions' that do not change 'the outcome of the case,' but could have far-reaching effects in future cases." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009)).

The district court correctly reasoned that § 1595(a) (the civil cause of action) and § 1589(b) (the criminal offense) must be read together to determine the focus at step two. But the district court erred when it concluded "that the focus of a claim for a violation of Section 1589 is where the forced labor occurred." SA-24. Although preventing firms from providing or obtaining forced labor is the focus of § 1589(a), the language of § 1589(b) is different and indicates that its focus is on preventing firms from benefiting from forced labor. Because the alleged conduct relevant to benefiting occurred in the United States, this case involves a domestic application of the TVPRA.

The district court was right to "look to both Section 1595, the cause of action, and Section 1589, the type of violation that occurred, to determine the

'focus' of Section 1595." SA-24. This approach follows from the Supreme Court's decision in *WesternGeco*. "When determining the focus of a statute, we do not analyze the provision at issue in a vacuum," the Court said. "If the statutory provision at issue works in tandem with other provisions, it must be assessed in concert with those other provisions." *WesternGeco*, 585 U.S. at 414. In *WesternGeco*, the Court concluded that the focus of the Patent Act's general damages remedy, 35 U.S.C. § 284, was "the infringement" of the Act. 585 U.S. at 414. "To determine the focus of § 284 in a given case," the Court reasoned, "we must look to the type of infringement that occurred." *Id.* at 415. Applying the same reasoning to the TVPRA, the focus of its civil cause of action is the "violation." 18 U.S.C. § 1595(a). To determine § 1595(a)'s focus in a given case, a court must therefore look to the type of violation that occurred, specifically benefiting from forced labor in violation of § 1589(b).

The district court went astray in determining the focus of § 1589(b). The court acknowledged that "Section 1589(a) prohibits knowingly providing or obtaining forced labor, while Section 1589(b) prohibits knowingly benefitting from participation in a venture that has provided or obtained forced labor." SA-24. Nonetheless, the district court went on to conclude that the focus of the two provisions was the same: "It is clear from the text of § 1589 that the underlying

‘focus’ of the provision is to prohibit the *use* of forced labor.” *Id.* (emphasis added). Certainly, the text of subsection (a) shows that its focus is to prohibit providing or obtaining forced labor. *See* 18 U.S.C. § 1589(a) (“Whoever knowing provides or obtains [forced labor]”). But the text of subsection (b) shows that its focus is to prohibit benefiting from forced labor. *See* 18 U.S.C. § 1589(b) (“Whoever knowingly benefits . . . from participation in a venture [that provides or obtains forced labor]”).

It is a well-established rule of statutory interpretation that “differences in language . . . convey differences in meaning.” *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017). “[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” *Russello*, 464 U.S. at 23 (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir 1972)). Courts should “refrain from concluding … that the differing language in the two subsections has the same meaning in each.” *Id.*

The district court resisted determining the focus of § 1589(b) separately from § 1589(a) because, it said, “the Court cannot individually analyze the subsections of Section 1589 ‘in a vacuum.’” SA-24 (quoting *WesternGeco*, 585

U.S. at 414). But the district court appears to have misunderstood the teaching of *WesternGeco*. There, the Supreme Court said that statutory provisions must be considered together when determining the focus if they work "in tandem." *WesternGeco*, 585 U.S. at 414. In this case, that is true of § 1595(a) and § 1589(b) because the former provides a civil cause of action for violations of the latter. But it is not true of § 1589(a) and § 1589(b). One need not prove a defendant violated § 1589(a) in order to prove it violated § 1589(b), and this case involves no claims under § 1589(a).

Indeed, *WesternGeco* teaches that a court must evaluate the focus of each subsection separately. The Supreme Court noted that "the Patent Act identifies several ways that a patent can be infringed" under 35 U.S.C. § 271, and then looked to the specific subsection, § 271(f)(2), "which was the basis for WesternGeco's infringement claim." *WesternGeco*, 585 U.S. at 415. The Court declined to opine upon a neighboring subsection, § 271(f)(1), because the lower court had not addressed it. *Id.* at 415 n.2.

Contrary to the district court's conclusion, the plain language of § 1589(b) shows that its focus is to prohibit persons from "benefit[ting], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of [forced labor]." 18 U.S.C. § 1589(b). The complaint

alleges that Milwaukee Tool engaged in conduct relevant to that focus in the United States by selling goods made with forced labor and retaining the proceeds. "If the conduct relevant to the statute's focus occurred in the United States," the Supreme Court said in *RJR Nabisco*, "then the case involves a permissible domestic application even if other conduct occurred abroad." 579 U.S. at 337.[8] Therefore, this case involves a permissible domestic application of the TVPRA.

## CONCLUSION

The decision of the district court should be reversed.

Dated: May 1, 2026

Respectfully submitted,

/s/ Alisa Tiwari
ALISA TIWARI
AGNIESZKA M. FRYSZMAN
NICHOLAS J. JACQUES

[8] Even if the district court were correct that the focus of § 1589(b) "is to prohibit the use of forced labor," SA-24, the Supreme Court has warned against centering the analysis on a provision's focus "without regard to the 'conduct relevant to that focus.'" *Abitron Austria*, 600 U.S. at 421 (quoting *WesternGeco*, 585 U.S. at 413). In the context of a § 1589(b) violation, the defendant's *conduct* relevant to combating forced labor is the defendant's receipt of the benefit from the forced labor.

**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 NEW YORK AVE., N.W.,
SUITE 800
WASHINGTON, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
atiwari@cohenmilstein.com
afryszman@cohenmilstein.com
njacques@cohenmilstein.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,888 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

May 1, 2026

/s/ Alisa Tiwari
ALISA TIWARI