**No. 25-3347**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

XU LUN, a pseudonym,
*Plaintiff-Appellant*,

v.

MILWAUKEE ELECTRIC TOOL CORPORATION, et al.,
*Defendants-Appellee*s.

---

On Appeal from the United States district court
for the Eastern District of Wisconsin
Case No. 2:24-cv-00803-BHL (The Hon. Brett H. Ludwig)

---

# AMICUS BRIEF OF THE STATES OF IOWA AND 11 ADDITIONAL STATES AS AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

---

BRENNA BIRD
Attorney General of Iowa
ERIC H. WESSAN*
Solicitor General
Office of the Attorney General
Hoover Building, Second Floor
1305 E. Walnut St.
Des Moines, IA 50263
(515) 823-9117
eric.wessan@ag.ia.gov

*Counsel for State of Iowa*
*(Additional counsel listed after signature block)*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... iii

INTERESTS OF AMICI CURIAE .................... 1

ARGUMENT .................... 4

I. Section 1595 of the TVPA Applies Extraterritorially .................... 5

a. The district court Failed to Properly Construe the Overall Context of the TVPA. .................... 7

b. The district court Failed to Properly Construe this Court's Holding in *Motorola Sols*. .................... 14

CONCLUSION .................... 21

CERTIFICATE OF COMPLIANCE .................... 22

CERTIFICATE OF SERVICE .................... 24

## TABLE OF AUTHORITIES

Cases


*Adhikari v. Kellogg Brown & Root, Inc.*,
845 F.3d 184 (5th Cir. 2017) .................................................... 4, 5

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024) .................................................... 5

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) .................................................... 5

*Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*,
575 U.S. 650 (2015) .................................................... 16, 17

*Lun v. Milwaukee Elec. Tool Corp.*,
2025 WL 3443536 (E.D. Wis. Dec. 1, 2025) ......... 1, 2, 3, 4, 8, 12, 18, 20

*Motorola So,*
*ls., Inc. v. Hytera Commc'ns. Corp. Ltd.*, 108 F.4th 458 (7th Cir. 2024)
.................................................... 5, 14, 15, 16, 17, 18

*Ratha v. Rubicon Resources, LLC*,
168 F.4th 541 (9th Cir. 2026) .................................................... 5, 10

*RJR Nabisco v. European,*
*Comty.*, 579 U.S. 325 (2016) .......................... 4, 5, 6, 7, 9, 10, 11, 13, 14

*Roe v. Howard*,
917 F.3d 229 (4th Cir. 2019) .................................. 4, 5, 6, 8, 13, 17, 19


Statutes


18 U.S.C. § 1589 .................................................... 20

18 U.S.C. § 1591 .................................................... 1

18 U.S.C. § 1595 .................................. 1, 8, 10, 11, 12, 13, 15, 17, 18, 19

18 U.S.C. § 1596 .................................................... 12, 13, 16, 18, 19

18 U.S.C. § 1836 .................................................... 15

18 U.S.C. § 1837 .................................................... 16, 17

18 U.S.C. § 1964 .................................................... 9, 10, 11, 13

18 U.S.C. §§ 1581–1597 .................................................... 1, 8, 19

18 U.S.C. §§ 1831–1839 .................................................... 14, 15, 16

## INTERESTS OF AMICI CURIAE

The State of Iowa and 11 additional States file this *amicus curiae* brief in support of pseudonymous Plaintiff-Appellant seeking reversal of the judgment of the U.S. district court for the Eastern District of Wisconsin. As detailed below, the district court incorrectly found that the civil penalty provision of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1581–1597 ("TVPA") does not apply extraterritorially. *Lun v. Milwaukee Elec. Tool Corp.*, 2025 WL 3443536, at *1 (E.D. Wis. Dec. 1, 2025). That error alone justifies reversal. But this Court should give extra scrutiny to the decision because of the potential implications for State Attorney General enforcement.

First, the TVPA expressly authorizes states to bring civil suits to protect their victimized residents. 18 U.S.C. § 1595(d). That includes enforcing Section 1591, which protects against the sex trafficking of children or sex trafficking through use of force, fraud, or coercion. *See* 18 U.S.C. §§ 1591, 1595.

Potential State Attorney General enforcement must also extend beyond the United States's shores. Indeed, Section 1591 expressly applies to any offender who knowingly affects "foreign" commerce, 18 U.S.C.

§ 1591(a). Yet the district court's ruling has the potential to impermissibly limit State actions to domestic conduct only, in contravention of the text and purpose of the TVPA. *See Lun*, 2025 WL 3443536, at *8–10. The district court's interpretation, while plausible, does not give the best meaning to the text. And if affirmed, the ruling could errantly curtail *Amici* States' express authority to civilly combat sex trafficking.

Second, beyond States' own express statutory authority to enforce the TVPA for unlawful extraterritorial conduct, *Amici* States also have a compelling interest in preserving their citizens' rights to seek civil redress from the perpetrators or benefiters of human trafficking. Human trafficking is a terrible ill suffered by the residents of the *Amici* States, and the *Amici* States must ensure that their residents' right to civil relief is not interfered with by the district court's legally incorrect ruling.

According to data from the Bureau of Justice Statistics, the number of federal human-trafficking prosecutions rose 73% from 2013 to 2023. Dep. of Justice, *Human Trafficking Data Collection Activities, 2025*, Off. of Justice Programs (2026), *available at* https://perma.cc/R6Y7-Z34K. Similarly, the number of convictions for human trafficking rose by 64%

for the same period. *See id.* Congress's expansion of the TVPA reflects human trafficking on the rise. It is crucial to maintain the availability of legal remedies for victims in the *Amici* States, not reduce them.

Drawing on but a few emblematic examples, in November 2025 the State of Oklahoma successfully prosecuted a Chinese human trafficking enterprise in Oklahoma City. Press Release, *30-year sentence recommended for man convicted of Chinese human trafficking operations in Oklahoma*, Office of Attorney General (Nov. 12, 2025), https://perma.cc/VWV3-Z7VU. The perpetrator of that enterprise used OKC Will Rodgers International Airport to transport female victims to and from Asia and trafficked them out of a south Oklahoma City residence. *Id.*

The State of Texas also successfully pursued civil penalties against perpetrators of an international human trafficking scheme in Austin. Press Release, *Attorney General Ken Paxton Stops Austin Business from Operating International Human Trafficking Scheme* (Jan. 29, 2025), https://perma.cc/W6Q2-3NAE. One of the claims in that suit included an employer threatening "trafficked employees" that she could "destroy" them. *Id.* That suit ended with civil penalties of $250,000, the maximum

amount under the state analogue to the TVPA that the case was brought under.

As these examples show, the *Amici* States have a strong interest in protecting their authority to prosecute human trafficking violations on behalf of their residents under the TVPA.

On the pleaded facts, this Court should reverse the district court's granting with prejudice Defendant's motion to dismiss Plaintiff's TVPA claim because it does not apply extraterritorially.

## ARGUMENT

The district court erred in reading *RJR Nabisco v. European Comty.*, 579 U.S. 325 (2016) to mean that the TVPA's criminal sections apply extraterritorially while its civil enforcement does not. *Lun*, 2025 WL 3443536, at *1. Indeed, two circuits have explicitly held that the civil penalties can apply to foreign conduct. *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 200 (5th Cir. 2017) ("The parties do not dispute that the 2008 Amendment [to the TVPA] enables federal courts to entertain a private party's civil suit that alleges extraterritorial violations."). And relying on those decisions, the en banc Ninth Circuit has also held that the criminal and civil

applications of the TVPA are "coextensive[]." *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541, 556 (9th Cir. 2026) (en banc) (relying on *Roe*, 917 F.3d at 243 and *Adhikari*, 845 F.3d at 201–02); *see also Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (recognizing that "[t]he Seventh Circuit also recently found a plausible TVPRA violation based on close cooperation between business entities") (citing *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 560 (7th Cir. 2023)). This Court should not split from its three sister circuits on this point.

But rather than focus on extra-circuit cases, this Court should instead follow its own precedent, *Motorola Sols., Inc. v. Hytera Commc'ns. Corp. Ltd.*, 108 F.4th 458 (7th Cir. 2024). And *Motorola* clarifies that the TVPA claim here can proceed past the motion to dismiss stage.

## I. Section 1595 of the TVPA Applies Extraterritorially.

Before the district court, the parties agreed that the operative legal rule is the test established in *RJR Nabisco* for extraterritorial application of a federal statute. "At the first step, we ask whether the presumption against extraterritoriality has been rebutted . . . [if not] then at the second step we determine whether the case involves a domestic

application of the statute" looking to its "focus." *RJR Nabisco*, 579 U.S. at 337.

That focus does not require express or explicit extraterritoriality language. *See*, *e.g.*, *Roe*, 917 F.3d at 242 ("[E]ven absent an express statement of extraterritoriality, a statute may apply to foreign conduct insofar as it clearly and directly incorporates a predicate statutory provision that applies extraterritorially."). *RJR Nabisco* explained that "[w]hile the presumption can be overcome only by a clear indication of extraterritorial effect, an express statement of extraterritoriality is not essential. Assuredly context can be consulted as well." 579 U.S. at 340 (quotation omitted).

Here, the district court fatally ignored (at least) three points in reaching its flawed determination that the civil remedy provision of the TVPA does not apply extraterritorially.

- *First*, the district court failed to heed the Supreme Court's holding that an express statement of territorial effect is "not essential." *Roe*, 917 F.3d at 240 (quoting *RJR Nabisco*, 579 U.S. at 340).

- *Second*, the district court failed to properly consider the statutory context of the TVPA.
- *Third*, the district court failed to properly construe this Court's controlling decision in *Motorola*.

For these, and all the other bases in the principal briefing, this Court should reverse the district court's grant on the basis that Section 1595 of the TVPA applies extraterritorially.

**a. The District Court Failed to Properly Construe the Overall Context of the TVPA.**

Beginning with the first and second of the district court's principal interpretive errors, the district court failed to place Section 1595 of the TVPA in its proper context within the TVPA. *RJR Nabisco* held that a substantive statutory provision may apply extraterritorially but needs to include a private cause of action that also applies abroad. 579 U.S. at 350 ("It is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries. Something more is needed.") The district court's first fundamental error is taking the requirement for "something more" and turning it into a requirement of express extraterritorial application. That flouts *RJR Nabisco* and other circuit precedent applying *RJR Nabisco* to the TVPA.

*See Roe*, 917 F.3d 229; *see also Doe 1*, 96 F.4th at 414n.4 (declining to affirm district court holding that TVPA "does not apply extraterritorially").

The district court based its incorrect ruling that Section 1595 of the TVPA does not apply extraterritorially on the following analysis:

> Section 1595 provides that victims of violations of the TVPA may bring a civil action against the perpetrator (or those who knowingly benefit from the violation), but it says nothing regarding extraterritorial application. Section 1596(a) provides that federal courts have 'extraterritorial jurisdiction' over any 'offense' under Sections 1581, 1583, 1584, 1589, 1590, or 1591 if certain conditions are met. There is no mention of Section 1595.

*Lun*, 2025 WL 3443536, at *10. The district court continues, in conclusory fashion without either analysis or citation: "Nor is there anything else in the statute suggesting Congress's intent to extend the TVPA's civil remedies to overseas conduct." *Id.* Thus, the district court impermissibly took *RJR Nabisco's* requirement of "something more" and turned it into a requirement of express statutory extraterritorial authorization, in violation of *RJR Nabisco*. Implicitly, the district court also found that the explicit authorization of extraterritorial criminal jurisdiction denied the same for civil. In doing so, the district court misses the forest for the trees.

The district court's statutory analysis is flawed in several ways. First, the district court fails to contend with the differences between the private rights of action authorized under the TVPA and under RICO, which was at issue in *RJR Nabisco*. In full, the private right of action provided for by RICO reads as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c). As noted in *RJR Nabisco*, RICO's private right of action contains several limitations that make it non-coextensive with the single substantive provision of RICO for which it provides individuals a private right of action.

"[B]y cabining RICO's private cause of action to particular kinds of injury—excluding, for example, personal injuries—Congress signaled that the civil remedy is not coextensive with § 1962's substantive prohibitions." *RJR Nabisco*, 579 U.S. at 350. Continuing, the Supreme

Court explained that the private right of action limits how securities fraud can support a private claim because "[t]his too suggests that § 1964(c) is narrower in its application than § 1962." *Id.*

The private right of action in the TVPA, by contrast, contains no such limitations. In full, the TVPA's private right of action reads:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Thus, unlike *RJR Nabisco* analyzing RICO, the civil private right of action under the TVPA is coextensive with the rest of the act. *See Ratha*, 168 F.4th at 556.

Indeed, the TVPA also expressly provides for civil enforcement actions by the states' attorneys general.

> In any case in which the attorney general of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by any person who violates section 1591, the attorney general of the State, as parens patriae, may bring a civil action against such person on behalf of the residents of the State in an appropriate district court of the United States to obtain appropriate relief.

18 U.S.C. § 1595(d). Section 1964 of RICO contains no section analogous to Section 1595(d)'s authorization of State Attorneys' General civil-enforcement actions.

The district court erred in glossing over the important distinctions between RICO and the TVPA—and thus by extension, with *RJR Nabisco*. So while *RJR Nabisco* provides the right test for the district court—and this Court—to apply, its incorrect application is an error of law.

That legal error leads directly to the district court's second error in construing the TVPA: The district court failed to contend with the overall structure of the TVPA, including its differences from RICO. In *RJR Nabisco*, the Supreme Court found that RICO overcame the presumption against extraterritoriality for a limited set of its criminal predicates.

> The inclusion of *some* extraterritorial predicates does not mean that *all* RICO predicates extend to foreign conduct . . . . RICO defines as racketeering activity only acts that are 'indictable' . . . under one of the statutes identified in § 1961(1). If a particular statute does not apply extraterritorially, then conduct committed abroad is not 'indictable' under the statute and so cannot qualify as a predicate under RICO's plain terms.

*RJR Nabisco*, 579 U.S. at 339. No such fine parsing is needed under the TVPA, because unlike RICO the TVPA includes an express statement of extraterritorial jurisdiction.

The TVPA's § 1596, which is separate and apart from both the civil and criminal sections of the act, expressly states that "**In general.**—In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591" if certain conditions are met which are not at issue here. 18 U.S.C. § 1596. So for at least certain enforcement, the TVPA is explicitly applicable extraterritorially.

Unfortunately, the district court found one express grant of extraterritorial application meant that silence elsewhere was a denial of the same. But that runs headlong into *RJR Nabisco*'s two-part test. Just because Section 1595 is not listed in Section 1596's express grant of extraterritorial applicability does not mean the TVPA fails *RJR Nabisco*'s two-step test. *Cf. Lun*, 2025 WL 3443536, at *10–12. The district court's approach is flawed because it fails to contend with the overall structure of the TVPA, an approach mandated by both *RJR Nabisco* and *Motorola*, and reaffirmed by normal textual principles of statutory construction.

Here is where the rubber hits the road on the differences between the TVPA and RICO, and thus between this matter and *RJR Nabisco*'s narrower finding of extraterritoriality for RICO claims: As recognized by *Roe*, "the purpose, structure, history, and context of the TVPA militate toward the extraterritorial application of § 1595." *Roe*, 917 F.3d at 241. Unlike RICO, the TVPA's private right of action is coextensive with its substantive provisions. *Compare* 18 U.S.C. § 1595 *with* 18 U.S.C. § 1964(c). And unlike RICO, the TVPA contains an express extraterritoriality provision, which by its plain languages applies to "any offense" under any of the enumerated sections, and is expressly "in addition to any domestic or extra-territorial jurisdiction otherwise provided by law." 18 U.S.C. § 1596(a).

The district court ignored those key statutory differences—but those differences are crucial to the holding in *RJR Nabisco* that statutory contextual indication of extraterritorial effect can be "dispositive." 579 U.S. at 340. Here, unlike in RICO, the entire structure of the TVPA points to extraterritorial application of Section 1595. *See Roe*, 917 F.3d at 243 ("Indeed, the TVPA more clearly targets foreign conduct than any

provision of RICO, as demonstrated by its international scope Congress's repeated expansions of its extraterritorial reach.").

Finally, this failure by the district court to consider the overall structure of the TVPA is best evinced by the district court's failure to properly construe, or comply with, this Court's analytic framework set forth in *Motorola*, as explained in the following section. Thus, at the most fundamental level, despite essentially exclusively relying on *RJR Nabisco*, the district court nevertheless violated the fundamental tenants of that holding.

**b. The District Court Failed to Properly Construe this Court's Holding in *Motorola*.**

While *Motorola* dealt with this Court's interpretation of the Copyright and Defend Trade Secrets Acts ("DTSA"), 18 U.S.C. §§ 1831–1839, rather than the TVPA, the extraterritoriality analysis can be analogized here.

This Court applied the *RJR Nabisco* test to explain that when a longstanding statute is amended to clarify extraterritorial effect that Courts may take notice of that and apply the extraterritoriality to related sections. *Motorola*, 108 F.4th at 481. There, the issue is whether an amendment to § 1837 of the DTSA allowed for extraterritorial application

of § 1836. *Id.* And this Court found that it did. So too for the 2008 Amendments to the TVPA and the substantive civil penalties available under § 1595.

Indeed, *Motorola* is useful for determining whether Section 1595 of the TVPA overcomes the presumption. Like the TVPA, the DTSA's private right of action does not expressly mention extraterritoriality, but other sections of the DTSA does expressly address that subject. "Here, however, neither the private right of action in 18 U.S.C. § 1836(b) nor the definition of 'misappropriation' . . . in section 1839(5) includes express references to extraterritorial conduct. The district court correctly looked to the rest of chapter 90 for guidance, including the express extraterritoriality provision in section 1837." *Motorola*, 108 F.4th at 481. Had the district court followed the path established by this Court in *Motorola*, and applied *RJR Nabisco* in that way, this case could have proceeded.

That the DTSA uses broader language to explain the grant of extraterritorial enforcement authority does not defeat the analogy. Instead, the analysis in *Motorola* readily supports finding extraterritorial enforcement authority granted here. The DTSA's jurisdictional provision

states that "[t]his chapter also applies to conduct occurring outside the United States if" one of two sub requirements essentially like those in Section 1596(a) of the TVPA are met. 18 U.S.C. § 1837. Rather than applying to the entire chapter, the TVPA's jurisdictional provision applies to certain enumerated "offense[s]," 18 U.S.C. § 1596(a), which further brings this matter within the ambit of the analysis of *Motorola*.

Like the TVPA, the DTSA's extraterritoriality provision applies to "offense[s]." 18 U.S.C. §§ 1837(1), (2) (stating that the extraterritoriality provision applies if "the offender is a natural person . . ." or if "an act in furtherance of the offense was committed in the United States"). In rejecting the argument that the word "offense" could not apply to a civil violation, this Court held that the defendant-appellant:

> relies on language from *Kellogg Brown* that, 'while the term 'offense' is sometimes used' to denote civil violations, 'that is not how the word is used in Title 18.' 575 U.S. 659. The argument gets the Supreme Court's reasoning in *Kellogg Brown* exactly backwards. The Court recognized that 'the term 'offense' is sometimes used . . . to denote a civil violation.' *Id*. The Court's statement that the term was not used that way in title 18 was a description of title 18 in 2015, not a sweeping command that the word may never be used in title 18 to refer to a civil violation.

*Motorola*, 108 F.4th at 485–86 (quoting *Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*, 575 U.S. 650, 659 (2015)). While this

Court recognized that based on the timing of both the DTSA and the *Kellogg Brown* decision, "[i]f *Kellogg Brown* had been handed down after the DTSA amended title 18, [appellant's] argument might be stronger." *Id*. at 486. "Might be stronger" however is not the same as valid.

More importantly, this Court gave more credence to overall reach of the DTSA rather than the defendant appellant's attempt to narrow its express extraterritorial legislative purpose: "We agree that Congress's decision to leave the introductory language in section 1837 unchanged, such that it continues to cover all of chapter 90, is more persuasive textual evidence than [appellant's] assertion that the Congress believed the term 'offense' could not encompass civil violations." *Id*. at 485.

Like the DTSA, the entire scope of the TVPA is directed to transnational conduct. As stated by the Fourth Circuit, "the purpose, structure, history, and context of the TVPA all support the extraterritorial application of § 1595 for an appropriate predicate offense." *Roe*, 917 F.3d at 242. Thus, the district court erred in attempting to cabin the word "offense" in Section 1595(a) to only criminal, rather than civil, violations.

Unlike in *Motorola*, the district court here read the term "offense" to apply only to criminal allegations into precisely the type of "sweeping command" this Court held to be legally unsupported. In declining to extend the express grant of extraterritoriality over "any offense" under 18 U.S.C. § 1596(a) to civil as well as criminal violations, the district court incorrectly ruled that "[t]he use of 'offense' in 2008—before the Supreme Court decided *Kellogg Brown*—must be interpreted to encompass only criminal violations, not civil ones." *Lun*, 2025 WL 3443536, at *12 (citing *Motorola*, 108 F.4th at 485).

But that application of *Motorola* is not the best application of *RJR Nabisco*, nor of the statute itself which, as amended, coextensively treats civil and criminal conduct. *See Ratha*, 168 F.4th at 556. And it is impossible to square with *Motorola* itself, where this Court stated that such arguments "get[] the Supreme Court's reasoning in *Kellogg Brown* exactly backwards." *Motorola*, 108 F.4th at 485. The district court's decision that Section 1595(a)'s use of the phrase "any offense" cannot include civil violations as a matter of law should be reversed for being in direct conflict with *Motorola*.

In conclusion, it is important to return to the TVPA's statutory structure and recenter the grant of extraterritorial jurisdiction over "any offense" to both criminal and civil violations of the TVPA. As ably summarized by the Fourth Circuit, "[t]he congressional findings that accompanied the TVPA in its original form repeatedly emphasized the transnational nature of human trafficking and sexual exploitation" and accordingly "the purpose, structure, history, and context of the TVPA all support the extraterritorial application of § 1595 for an appropriate predicate offense" *Roe*, 917 F.3d at 236, 242.

To combat the transnational problem of human trafficking, Congress provided victims with a private right of action, and expressly granted the States authority to pursue claims under § 1591 on behalf of their victimized residents. 18 U.S.C. §§ 1595(a), (d). To remove any doubt that these transnational claims can be based on extraterritorial actions, Congress set forth extraterritorial jurisdiction "[i]n addition to any domestic or extra-territorial jurisdiction otherwise provided by law" for "any offense" under §§ 1581, 1583, 1584, 1589, 1590, and 1591. 18 U.S.C. § 1596(a).

Under that grant of jurisdiction under Section 1589, Plaintiff-Appellant Lun brought a private right of action against, among other parties, a domestic corporation alleged to have benefitted from his forced-labor trafficking in a Chinese prison camp. *Lun*, 2025 WL 3443536, at *7 ("Xu Lun brings a single claim, alleging that Defendants violated 18 U.S.C. § 1589.").

Despite his statutory authorization to do so, which would be in keeping with both the purpose and text of the TVPA, the district court erroneously dismissed the action for lack of jurisdiction, incorrectly holding that the term "offense" could not extend to a civil cause of action as a matter of law. *Id.* at *12.

So the *Amici* States urge the Court to reverse the district court's grant of the motion to dismiss Plaintiff's TVPA claims with prejudice. That both protects *Amici* States' residents' rights to pursue civil actions for violations of the TVPA, and the *Amici* States' rights to pursue actions on behalf of those citizens under the TVPA, a statute entirely directed at combating the international scourge of human trafficking.

## CONCLUSION

*Amici* States respectfully urge the court to reverse the district court's decision.

Dated: May 1, 2026

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

<u>*/s/ Eric H. Wessan*</u>
Eric H. Wessan
Solicitor General
Office of the Attorney General
Hoover Building, Second Floor
1305 E. Walnut St.
Des Moines, IA 50263
(515) 823-9117
eric.wessan@ag.ia.gov

*Counsel for State of Iowa*

## ADDITIONAL COUNSEL

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Kris Kobach
Attorney General of Kansas

Rusell M. Coleman
Attorney General of Kentucky

Catherine Hanaway
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Gentner Drummond
Attorney General of Oklahoma

Alan Wilson
Attorney General of South Carolina

Jonathan Skrmetti
Attorney General of Tennessee

Ken Paxton
Attorney General of Texas

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), Fed. R. App. P. 29 (a)(5), and Circuit Rule 29 because this brief contains 4,018 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*s/ Eric H. Wessan*
Eric H. Wessan

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Eric H. Wessan*
Eric H. Wessan